OPINION OF THE COURT
 

 Ciparick, J.
 

 In
 
 String fellow’s of N. Y. v City of New York
 
 (91 NY2d 382), we held that New York City’s amended zoning resolution regulating adult establishments did not violate their constitutional rights of free expression. This case arises out of New York City’s enforcement of that zoning resolution. The issue is whether the courts below employed the proper definition of “stock” as used in the City’s administrative guidelines interpreting the zoning resolution. We conclude that the lower courts’ interpretation of “stock” included considerations beyond what the City’s guidelines provide and reverse.
 

 The City commenced this action against Les Hommes, a Manhattan book and video store catering to the gay male community, and its owner to abate an alleged nuisance based on a violation of its zoning resolution
 
 (see,
 
 Administrative Code of City of NY § 7-703 [k]; § 7-714). Under that resolution, in order to qualify as an “adult establishment” a “substantial portion” of the business must include, as relevant here, an “adult book store * * * adult theater, or other adult commercial establishment or any combination thereof’ (Amended Zoning Resolution of City of NY § 12-10 [Definition of “Adult Establishment”]). To qualify as an “adult book store,” a business must have a “substantial portion” of its “stock-in-trade” in, among other things, printed matter or video representations depicting “specified sexual activities” or “specified anatomical areas” as those are defined in the resolution
 
 (id.).
 

 The City’s zoning resolution further directs that in determining whether a book store has reached the “substantial portion” threshold, the following factors “shall be considered”: “(1) the amount of such [adult] stock accessible to customers as compared to the total stock accessible to customers in the establishment; and (2) the amount of
 
 floor area
 
 and
 
 cellar
 
 space accessible to customers containing such stock; and (3) the amount of
 
 floor area
 
 and
 
 cellar
 
 space accessible to customers containing such stock as compared to the total
 
 floor area
 
 and
 
 cellar
 
 space accessible to customers in the establishment”
 
 (id.
 
 [italics in original]).
 

 
 *271
 
 In response to an inquiry as to what constitutes a “substantial portion,” the City Department of Buildings issued Operations Policy and Procedure Notice (OPPN) No. 4/98, and several weeks later superseded it with OPPN No. 6/98. Both imposed similar guidelines “to clarify the meaning of the phrase ‘substantial portion’ ” (Dept of Buildings, Operations Policy and Procedure Notice No. 6/98, Aug. 13, 1998). With respect to “adult establishments” generally, if “at least 40 percent of the floor and cellar area that is accessible to customers [is] available for adult” use, then a “substantial portion” of the business is devoted to adult use within the zoning resolution. In any event, if “10,000 or more square feet of a commercial establishment * * * is occupied by an adult use, the commercial establishment is deemed to be an ‘adult establishment’ regardless of the overall size of the establishment”
 
 (id.).
 

 With regard to book stores particularly, “ [i] f at least 40 percent of the book store’s total stock accessible or available (‘accessible’) for sale or rent to customers is comprised of adult materials, then the book store has a ‘substantial portion’ of its stock in adult materials”
 
 (id.).
 
 Furthermore, “[a]n establishment also includes an adult book store if 40 percent of the establishment’s floor area and cellar space accessible to customers contains stock in adult materials”
 
 (id.).
 

 The City’s zoning resolution became enforceable on July 28, 1998, when the United States Supreme Court denied an application for a stay in a related case, ending a series of stays that had been in effect to that date
 
 (see, Amsterdam Video v City of New York,
 
 146 F3d 99 [2d Cir],
 
 request for stay denied
 
 524 US 966,
 
 cert denied
 
 525 US 1067). Shortly thereafter, the City brought this action by order to show cause and sought a preliminary injunction, enjoining Les Hommes from using the premises as an “adult establishment.”
 

 • After several days of hearings involving attempts by Les Hommes to comply with the zoning resolution, Supreme Court refused to grant a preliminary injunction. The court determined that with regard to its front room, Les Hommes had increased its stock of nonadult videos to comply with the 60:40 formula. With regard to the back room, which comprised rows of video booths with closing doors as well as two mini-theater areas with movie screens and viewing areas, the court determined that the City had met its burden of establishing that the video booths were showing adult videos, but that the exhibition of nonadult videos in the mini-theaters “ha[d] been confirmed by
 
 *272
 
 city inspectors”
 
 (City of New York v Les Hommes,
 
 order on motion for preliminary injunction, slip opn, at 22, index No. 402704/98 [with two related actions Nos. 402702/98, 402703/ 98] [Aug. 28, 1998]). Although the court was concerned the movies shown in the mini-theaters “could change overnight,” the “potential of recidivism alone” did not mean that the City had met its burden of proving the need for a preliminary injunction.
 

 The case then proceeded to trial on the issue of a permanent injunction. After several additional days of testimony, the court’s findings of fact regarding the amount of stock dedicated to adult use remained the same. It determined that only 24% of Les Hommes’s stock consisted of adult videos. However, several considerations, in the court’s view, compelled the conclusion that Les Hommes was an “adult establishment.” Regarding the videos, it was significant to the court that the nonadult videos were offered only for sale, not for rent. That fact along with the “terribly stable volume of non-adult videos” that had “been supplemented only modestly” in several months, meant that compliance with the City’s guidelines had only been “facial” and was done “to make a formalistic compliance with the 60/40 ratio.” In essence, the court considered compliance to be a “sham,” which meant that the nonadult videos could not be considered “stock.” As a result, the court permanently enjoined defendants from operating the premises for the purposes of conducting an adult use, with the proviso that defendants could apply to modify the judgment upon certain specified conditions.
 

 The Appellate Division affirmed, agreeing with Supreme Court that the sale by Les Hommes of the nonadult videos was a sham and that Les Hommes “in its true aspect remains a non-conforming adult video establishment.” (258 AD2d 284, 285.) The Court stated that because the presence of the non-adult videos did not affect the “essential nature” of Les Hommes as an adult video store, the entire front room was dedicated to adult stock and concluded that Les Hommes was an “adult establishment.” This Court granted defendants leave to appeal, and we reverse.
 

 We agree with defendants that the definition of “stock” as used in the City’s administrative guidelines does not include inquiry into whether a video is offered solely for sale or whether the inventory of such videos is stable, constantly supplemented or profitable. The City’s own guidelines interpret the zoning resolution literally. Nowhere in the operative OPPN No. 6/98
 
 *273
 
 are factors other than amount of stock and floor space mentioned. Instead, the focus is solely on the appropriate percentages of stock and floor and cellar space, and the City drew these at 40%. As a result, the City’s guidelines provide no support for the view that profitability or stability of the non-adult stock need be considered.
 

 The cases guiding our analysis in this area require that we show a healthy respect for the plain language employed and that it be construed in favor of the property owner and against the municipality which adopted and seeks to enforce it
 
 (see, Matter of Raritan Dev. Corp. v Silva,
 
 91 NY2d 98, 103;
 
 Matter of Allen v Adami,
 
 39 NY2d 275, 277;
 
 Thomson Indus. v Incorporated Vil. of Port Washington N.,
 
 27 NY2d 537, 539;
 
 440 E. 102nd St. Corp. v Murdock,
 
 285 NY 298, 304). Given the City’s precise guidelines, we cannot cast a wider net to capture unspecified considerations such as whether nonadult stock is stable or unprofitable. The lower courts improperly injected these considerations into the mix, even though the City’s guidelines admit no such impediments to compliance.
 

 There may indeed be situations where what a store is selling or renting cannot be considered stock under the City’s guidelines. To the extent that the lower courts recognized this limitation, we would agree with them. Nonetheless, nothing in this record indicates that the nonadult videos sold by Les Hommes were not “stock.” The testimony was clear that the nonadult videos were prominently displayed on racks in the front of the store. Also, there can be little question that these videos were accessible and available. No evidence indicated that these videos could not be purchased upon demand. Indeed, 52 of these videos had been bought over several months. Reliance on a sale versus rental distinction was error. The administrative guidelines treat sales and rentals in the same way.
 

 In the end, we must enforce the City’s administrative guidelines as written. Either the stock is accessible or available, or it is not; either the appropriate amount of square footage is dedicated to nonadult uses, or it is not. Questions about whether the owner of Les Hommes had a good-faith desire to sell nonadult products, whether the “essential nature” of Les Hommes is adult or nonadult, or whether the volume of non-adult stock is stable or profitable are not part of the inquiry here, where we are only called upon to determine whether items are accessible or available as stock. We cannot rewrite the City’s guidelines to include these additional considerations.
 

 
 *274
 
 We need not and do not address appellant’s remaining contentions.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.
 

 Order reversed, etc.