OPINION OF THE COURT
Rosenblatt, J.
Under New York City Zoning Resolution § 12-10, an “adult eating or drinking establishment” is one “not customarily open *53 to the general public * * * because it excludes minors by reason of age.” Stringfellow’s, a topless bar,[1] contends that because it has adopted a policy for the admission of minors, it is not an “adult eating or drinking establishment.” We reject this argument and affirm the order of the Appellate Division.
L
In 1993, the New York City Department of City Planning began a comprehensive assessment of the impact of adult establishments on the quality of urban life. In DJL Rest. Corp. v City of New York (96 NY2d 91 [decided today]), we recounted the history and results of New York City’s initiative in studying and dealing with the adverse effects of adult establishments. The study concluded in 1995 with the City’s adoption of an Amended Zoning Resolution (see, Amended Zoning Resolution of City of NY § 12-10 [hereinafter AZR]) as a means of stemming the negative, secondary effects of adult establishments, such as crime, property devaluation, blight, and the inappropriate exposure of children and teenagers to sexually oriented environments.
The AZR confines certain “adult eating or drinking establishments” to the City’s manufacturing and high density commercial zoning districts and mandates that they be a minimum distance from areas where children are likely to be present, such as churches, schools and day care centers (see, Zoning Resolution of City of NY § 32-01 [b]; § 42-01 [b]).
In 1996, a group of establishments, including Stringfellow’s, brought an unsuccessful attack on the constitutionality of the AZR (see, Stringfellow’s of N. Y. v City of New York, 91 NY2d 382). Rejecting this challenge, we held that the AZR was not “purposefully directed at controlling the content of the message conveyed through adult businesses,” but was aimed at the entirely separate societal goal of ameliorating the adverse social consequences of proliferating adult uses (see, Stringfellow’s of N. Y. v City of New York, 91 NY2d, at 397, supra; see also, City of Renton v Playtime Theatres, 475 US 41, 47-50; Matter of Town of Islip v Caviglia, 73 NY2d 544, 552-555). Moreover, we recognized that the AZR is applicable even to establishments that may legitimately claim they do not contribute to urban blight (see, Stringfellow’s of N. Y. v City of New York, 91 NY2d, at 401, supra).
*54 While Stringfellow’s was pursuing its constitutional challenge, it adopted a policy in which it purported to admit minors. The “minors policy,” set forth in a seven-page document, is an elaborate eight-step protocol. First, the doorman is instructed to call a manager, who must then “beep or call one of [their] attorneys!” (Managers have all the home phone, mobile phone and beeper numbers of the attorneys.) A staffer then must photocopy the ID or license of the parent or guardian and accompany the adult on a tour of the establishment so that the adult may determine if it is suitable for the minor. If so, the parent or guardian must sign a sworn statement that the entertainment featured “is not harmful” to the minor and staple it to a copy of the adult’s ID. The staffer must then ask the child for identification. The child must attest, under oath and in writing, that “this type of entertainment is not harmful or offensive to me in any way” and that “I will not be harmed by seeing exposed female breasts.” No minor may be admitted unless accompanied by a parent or guardian, and there is no age minimum. Thus, a child of any age may presumably be admitted, except that no “table dances” are to be given to “customers under 17.” The protocol concludes with a nine-point checklist and an admonition that all of the papers and materials must be preserved.
From the summer of 1997, when the policy was instituted, until November 5, 1998, Stringfellow’s admitted only one minor, a 13-year-old child from Caracas, Venezuela. This event was unusual enough to be reported in the newspapers.
After promulgating its minors policy, Stringfellow’s sought a judgment declaring that it was not an “adult eating or drinking establishment” as defined by the AZR. After the City brought an enforcement proceeding, Supreme Court consolidated the actions. Stringfellow’s moved to dismiss the City’s complaint and Supreme Court granted the motion. The Appellate Division reversed and remanded the matter for further proceedings, concluding that Stringfellow’s is an “adult eating or drinking establishment,” notwithstanding its minors policy. Upon remand from the Appellate Division, Supreme Court, among other rulings, granted a permanent injunction preventing Stringfellow’s from using the premises as an adult establishment and the Appellate Division affirmed. Stringfellow’s appealed to this Court as of right, pursuant to CPLR 5601 (b), and we now affirm.
*55 IL
Pursuant to the AZR an “adult establishment” is “a commercial establishment where a ‘substantial portion’ of the establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof’ (see, Amended Zoning Resolution of City of NY § 12-10). An “adult eating or drinking establishment,” in turn, is:
“an eating or drinking establishment which regularly features any one or more of the following:
“(1) live performances which are characterized by an emphasis on ‘specified anatomical areas’ or ‘specified sexual activities,’[2] or
* * *
“(3) employees who, as part of their employment, regularly expose to patrons ‘specified anatomical areas;’ and
“which is not customarily open to the general public during such features because it excludes minors by reason of age” (Amended Zoning Resolution of City of NY § 12-10 [b] [italics and footnote added]).
As a bar that features topless dancing, there is no question that Stringfellow’s meets subdivisions (1) and (3) of the definition. Stringfellow’s focuses, however, on the underscored phrase: “not customarily open to the general public during such features because it excludes minors by reason of age.” Stringfellow’s contends that by adopting a minors policy, it has become “customarily open to the general public” and does not “exclude [] minors by reason of age.” It argues that the underscored phrase must be given some meaning, relying on City of New York v Dezer Props. (95 NY2d 771, 773), in which we *56 recognized the importance of according “meaning to every section of the [AZR].” Moreover, Strihgfellow’s contends that the statute must be read as written, with no further requirements beyond those that the City expressly included (see, City of New York v Les Hommes, 94 NY2d 267, 274). Thus, because it purportedly admits minors, the argument goes, it cannot be counted as an “adult eating or drinking establishment.” Finally, Stringfellow’s argues that the Appellate Division erred by considering industry standards in its interpretation of the word “customarily” in the AZR.
We reject these arguments. As the Appellate Division observed, the minors policy represents Stringfellow’s attempt “to avoid both the restrictions of the [AZR] as well as any potential criminal liability” (253 AD2d 110, 119). In essence, it reflects an impossible tightrope walk between the AZR and the Penal Law: If children are not customarily admitted, the establishment is subject to the AZR. If children are customarily admitted, the management risks criminal prosecution.
Stringfellow’s so-called minors policy is an obvious attempt at an end run around the AZR. Under any definition, Stringfellow’s is not “customarily open to the general public.” In Teachers Ins. & Annuity Assn. v City of New York (82 NY2d 35, 43), we interpreted the phrase “customarily open or accessible to the public” contained in the New York City Landmarks Law. We explained that “customary openness” requires openness that is “usual, ordinary or habitual (rather than rare or occasional).” Stringfellow’s minors policy plainly fails this test. Minors cannot walk up to the club and be admitted. Indeed, the minors policy is drawn so restrictively as to amount to the de facto exclusion of minors. It comes as no surprise that Stringfellow’s purportedly admitted only one child under its policy.
When the lawmakers’ purpose is as clear as it is here, we will not bend their words into the shape of a loophole. The City, in drafting the AZR, was exacting in its requirement that these establishments be distanced from schools and day care centers (see, Zoning Resolution of City of NY § 42-01 [b]; see also, Fredericks, Adult Use Zoning: New York City’s Journey on the Well-Traveled Road From Suppression to Regulation of Sexually Oriented Expression, 46 Buff L Rev 433, 451 [1998]; see generally, Buzzetti v City of New York, 140 F3d 134). The AZR was designed to keep children away from these establishments, not to have them invited in as customers.
*57 Stringfellow’s strained interpretation is at odds with the underlying purposes of the Penal Law, which includes provisions designed to shield children from exposure to activities appropriate only for adults (see, e.g., Penal Law § 260.10 [endangering the welfare of a child]; Penal Law § 235.21 [disseminating indecent material to minors]) and would create an untenable paradox. Instead of receiving the intended benefits of the AZR, children would serve as the very vehicles by which topless bars can escape classification as “adult eating or drinking establishments.” With supreme irony, the more children the management were to admit, the more secure would be its claim that it is customarily open to the public. We cannot countenance this construction.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
Order affirmed, with costs.

. Stringfellow’s has changed its name to “Ten’s.” In that the caption refers to Stringfellow’s, we continue that designation in this opinion.

. Section 12-10 of the Zoning Resolution also further defined the terms used in the above section as follows:
“[Specified sexual activities” are “(1) human genitals in a state of sexual stimulation or arousal; (2) actual or simulated acts of human masturbation, sexual intercourse or sodomy; or (3) fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast.”
“Specified anatomical areas” are “(1) less than completely and opaquely concealed: (i) human genitals, pubic region, (ii) human buttock, anus, or (iii) female breast below a point immediately above the top of the areola; or (2) human male genitals in a discernibly turgid state, even if completely and opaquely concealed.”