MINER, Circuit Judge,
dissenting:
My dissent is prompted by my opinion that VIP is likely to succeed on its claim that Berlin’s ordinance was unconstitutionally vague as applied to the zoning application that VIP submitted on March 26, 2009.
I accept the proposition that the phrase “substantial or significant portion of its stock in trade” is not unconstitutionally vague on its face. This is so because that phrase generally does not “fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits” and because it does not “authorize[ ] or even encourage[ ] arbitrary and discriminatory enforcement.” Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). The phrase may be unconstitutional as applied, however, because
there may be instances where an adult bookstore would be unsure of whether its stock, floorspace, or revenue is made up of a “significant or substantial portion” of adult material, [and] there are myriad instances in which it would not. If, for example, Victoria’s Secret sold a few copies of an adult magazine along with its regular stock of lingerie, it certainly would not wonder if the ordinance applied to it. Or, if the store chose to carry nothing but adult videos and toys, it would have no doubt that it was required to obtain an SOB [sexually oriented business] license to do so. In short, in many situations, “people of ordinary intelligence” would clearly understand whether or not the ordinance applied to them.
Doctor John’s, Inc. v. City of Roy, 465 F.3d 1150, 1158 (10th Cir.2006) (emphasis supplied). “Many” is not “all,” and the situation at hand lies somewhere in be *194 tween the examples given in the quoted excerpt: VIP may have 8,000 “adult” items on hand, but that number represents but 12% of its stock in trade.
Continuing with its analysis of the facial validity of an ordinance similar to the one at hand, the Tenth Circuit opined:
In the same way, in many cases the ordinance cannot be said to permit arbitrary enforcement.... There may be occasions where arbitrary enforcement might occur, but the standard given to officials satisfies this court that such a risk is not present to such a degree as to justify facial invalidation.
Id. (emphasis supplied).
This is a case in which a person of ordinary intelligence would not clearly understand whether the ordinance applied to him and where arbitrary enforcement has occurred, all due to the manner in which the decision-maker treated VIP’s application. In examining the as-applied vagueness challenge before us, we are constrained to determine whether (1) the ordinance gives a reasonable opportunity to one of ordinary intelligence to know what is required; and (2) to consider whether the ordinance provides explicit standards that govern its application. See Rubin v. Garvin, 544 F.3d 461, 468 (2d Cir.2008).
In applying the ordinance to VIP, the decision-maker, Denise McNair, Town Manager for the Town of Berlin, reworked the ordinance so as to provide her own “spin” to the phrase “substantial or significant portion of its stock in trade,” resulting in a decision having no reference to the ordinance itself. Her testimony also demonstrated considerable confusion about the meaning of the ordinance. For example, she testified as follows:
I think that substantial or significant means meaningful to someone, myself— or the Town of Berlin, I should say, not myself. But meaningful to either the business or the Town of Berlin. I think of a significant other. I think I said that in my deposition. When I hear these words, it’s somebody who is meaningful to the other person it’s not just a friend so it would have some meaning. It would have import to the business. It would have meaning to the town under the ordinance.
To Ms. McNair, “meaningful” entails a subjective judgment. Indeed, it is a word that is vitalized only in the eye of the beholder. The dictionary defines it as “having a meaning or purpose: capable of being understood or interpreted: requiring or done with understanding and intent.” Webster’s Third New Int’l Dictionary 1399 (1981). “Having a meaning or purpose” surely does not illuminate the phrase in question. Moreover, “meaningful” does not serve as a synonym for “substantial” or “significant” as a modifier of “a portion of its stock in trade,” because a “meaningful portion of its stock in trade” establishes no objective standard at all. This is especially so in light of Ms. McNair’s formulation of substantial or significant as “meaningful to either the business or the town.” (emphasis supplied). And the term “significant other” is especially inappropriate to an assessment of compliance with the ordinance, since it is defined as “a person who is important to one’s well-being; especially: a spouse or one in a similar relationship.” Merriam-Webster Online Dictionary, at http://www. merriam-webster.com (last visited Jan. 22, 2010) (emphasis omitted).
To compound her unconstitutional application of the ordinance, Ms. McNair insisted that she “was unable to supply a mathematical definition” and “didn’t really look at a percentage,” although the ordinance clearly revolves around a measure of quantity, i.e. what portion of stock in trade is *195 allowed to consist of adult items. In answer to an inquiry as to whether there were any “publicly available instructions or other guidance” that would be helpful to an applicant, the Town Manager answered: “Other than the ordinance, I don’t believe so.”
Ms. McNair described her methodology for examining VIP’s application as follows:
Basically I looked at the application. I looked at the list of what I would have called “inventory” that was attached to the application. I read our ordinance, as it was fairly new to me in my position as well as to the town. And I, based on those items and my own experience, I determined that it did need a license for a sexually oriented business.
Such a methodology cannot be said to provide a reasonable opportunity to VIP to know what is required. Under the test applied by the Town Manager, what is required is unknowable.
The lack of any instructions or guidance for interpreting the “substantial or significant” language of the ordinance makes for a sharp contrast between the administration of the Berlin ordinance and similar ordinances in other municipalities. The amicus brief filed by the Connecticut Attorney General takes note of numerous municipalities in the State of Connecticut that specify anything over 10% of the stock in trade in adult items as sufficient to designate a business as sexually oriented. I note here that VIP is seeking to maintain an inventory of adult items at 12% but would stock only 10% to provide a 2% buffer, according to the testimony of Dominick DeMartino, owner of VIP.
Also by way of contrast, I refer to the zoning ordinance of the City of New York insofar as it governs adult bookstores. The ordinance refers to such stores as having a “substantial portion” of its “stock-in-trade” in adult items. See City of N.Y. v. Les Hommes, 94 N.Y.2d 267, 270, 702 N.Y.S.2d 576, 724 N.E.2d 368 (1999) (internal quotation marks omitted). However, New York City has provided guidance in the form of an Operations Policy and Procedure Notice issued by the Department of Buildings. This administrative regulation provides that “ ‘[if] at least 40 percent of the book store’s total stock accessible or available ... is comprised of adult materials, then the book store has a ‘substantial portion’ of its stock in adult materials.’ ” Id. at 271, 702 N.Y.S.2d 576, 724 N.E.2d 368. The New York Court of Appeals has held that the specific guidelines thus provided govern the allowable stock-in-trade.
And in a challenge to the zoning requirement by a sexually oriented business in New York City on the ground “that the ordinance’s distance requirements are too vague because they do not include a statement indicating the precise standard for measurement,” the New York Court of Appeals noted the following:
To the extent that this aspect of the ordinance’s provision leaves room for confusion, the problem is procedurally remediable through administrative application and rule making. Notably, there is no indication on the present record that the City’s enforcement of the distance rules will be arbitrary or uneven.
Stringfellow’s of N.Y., Ltd. v. City of N.Y., 91 N.Y.2d 383, 405-06 (1998). The Town of Berlin has not remedied the confusion generated by the phrase at issue through administrative application or rule making, and the record here indicates that the enforcement of the ordinance is arbitrary and uneven.
In determining whether the regulation challenged here is constitutional as applied to the plaintiff, we are required to determine “whether the [ordinance] presents an ordinary person with sufficient notice of or *196 the opportunity to understand what conduct is prohibited or proscribed.” Thibodeau v. Portuondo, 486 F.3d 61, 67 (2d Cir.2007) (Sotomayor, /.). In this connection, I refer to the uncontroverted testimony of Mr. DiMartino:
Q. Do you know what substantial or significant portion of stock in trade means in terms of an actual number?
A. No.
Q. Has anyone from the town ever told you an actual number that “substantial or significant portion of stock in trade” means?
A. No.
Q. And in denying your application, did the town provide you any information as to how you could come into compliance with that definition?
A. No, they did not.
Although Ms. McNair responded in the affirmative to the question of whether she “believe[d] [that] most people will know one way or the other” (emphasis supplied) what is meant by “substantial and significant,” it is apparent that Mr. DeMartino never was able to acquire such knowledge, either “one way or the other.”
I can only conclude from the foregoing that the Berlin ordinance is unconstitutionally vague as applied to VIP because: it has been applied in an arbitrary way, without explicit and knowable standards; that a person of ordinary intelligence has no opportunity to know what is required; and that the interpretation by the Town Manager is inconsistent with the intent and purpose of the ordinance—to establish some measure for determining what numerical proportion of a store owner’s inventory of adult items may be carried in a retail establishment not located in an area zoned for sexually oriented businesses. These conclusions are also informed by the past dealings between VIP and the Town of Berlin and the First Amendment implications of the ordinance.
For the foregoing reasons, I would affirm the Order of the District Court.