OPINION OF THE COURT
Marcy L. Kahn, J.
Petitioner Michael Miller, also known as Mike Johnson (petitioner or Miller), was convicted by plea of guilty of criminal possession of a controlled substance in the second degree (Penal Law § 220.18) and on February 28, 1992 was sentenced to an indeterminate term of three years to life imprisonment. He now seeks a judgment and order of this court pursuant to CPLR 7803 (1) directing respondent New York State Department of Corrections and Community Supervision (respondent or DOCCS) to terminate his parole administratively pursuant to Correction Law § 205 (4).[1] For the reasons stated, the petition is granted.
I. Procedural History
The procedural history of the case was detailed in this court’s decision and order of June 17, 2011 (Miller I) on Miller’s pro se motion filed March 17, 2011 for resentencing pursuant to the Drug Law Reform Act of 2005 (DLRA-2) (L 2005, ch 643, § 1) and for termination of his sentence pursuant to Executive Law § 259-j (3-a) and CPL 440.20, and will not be repeated here. In that decision, this court denied Miller’s motions for DLRA-2 resentencing and for vacation of his sentence, but converted the latter motion into this proceeding pursuant to CPLR article 78, adding DOCCS as a party and appointing counsel to represent petitioner upon the advice from DOCCS that it would oppose the application.
On July 7, 2011, Terrence X. Tracy, Esq., counsel to the New York State Board of Parole (Parole Board), submitted a letter on behalf of respondent in opposition to the petition. On July 26, 2011, Glenn F. Hardy, Esq., petitioner’s assigned counsel, *763 submitted an affirmation in reply supporting the application. The Office of the Attorney General, by Assistant Attorney General Kevin R. Harkins, filed a surreply in further opposition, and this court heard oral argument on August 12, 2011.
II. Discussion
Petitioner, who is currently in federal custody, claims entitlement to administrative termination of parole by DOCCS and the Parole Board pursuant to Correction Law § 205 (4), which states in pertinent part: “[DOCCS] must grant termination of sentence after three years of unrevoked presumptive release or parole to a person serving an indeterminate sentence for a class A felony offense defined in article two hundred twenty of the penal law.”
Petitioner bases his claim on the facts, which are both seemingly unique and undisputed on this motion, that he was released[2] to parole supervision on his class A-II drug felony in this case on October 11, 2001, and thereafter served uninterrupted, unrevoked parole beyond October 11, 2004. On December 19, 2004, he was arrested on a new charge, which resulted in the issuance of a parole violation warrant on December 30, 2004 and his receipt of a notice of violation on January 3, 2005. At that time, he waived his right to a preliminary parole revocation hearing. On January 19, 2005, the Parole Board declared Miller delinquent as of December 19, 2004. Petitioner had his parole revoked at a final parole revocation hearing on May 5, 2005. The effective date of the administrative termination of parole provision in the DLRA, now codified as section 205 (4), was February 12, 2005, subsequent to the declaration of petitioner’s delinquency but prior to his final revocation of parole. Both parties agree that the legislative history of that statute “indicates that the provision was designed to provide retroactive relief to those who had accrued sufficient consecutive parole time at the point of enactment.” (Matter of Ciccarelli v New York State Div. of Parole, 35 AD3d 1107, 1108 [3d Dept 2006], lv denied 8 NY3d 806 [2007], quoting Assembly Introducer Mem in Support, Bill Jacket, L 2004, ch 738, at 6.) Whether Miller’s undisputed factual record constitutes such sufficient unrevoked parole time under the recognized standard is the subject of intense debate on this motion, however.
Petitioner contends that he succeeded in serving' three years of unrevoked parole and was therefore entitled to administra *764 tive termination under the statute. He argues first, that his three years of service from October 11, 2001 to October 11, 2004, should earn him relief under section 205 (4), as the declaration of delinquency was filed based on an incident which occurred after the completion of that period. He maintains that language in Matter of Ciccarelli {supra), supports that construction of the statute. Miller further argues that in any case, his revocation of parole did not occur until he lost the final hearing on May 5, 2005, so that his parole had not been revoked on the statute’s effective date of February 12, 2005, further attesting to his eligibility for relief.
Petitioner also relies on People ex rel. Ordonez v Warden, Rikers Is. Correctional Facility (10 Misc 3d 241 [Sup Ct, Bronx County 2005]), to support his claim. In that case, the defendant was convicted of a class A-II drug felony and after serving the minimum term of his indeterminate incarceratory sentence, was released to parole, which he had been serving successfully for 13 years at the time the statute became effective. Several months later, his parole was revoked. On his application after the revocation, the court held that Ordonez had qualified for administrative termination of his parole by his service of more than three years of unrevoked parole at the time of the enactment of section 205 (4), notwithstanding the subsequent revocation of his parole.
DOCCS maintains that three decisions of the Appellate Division have resolved the present issue squarely against petitioner by finding that 205 (4) “does not provide retroactive relief where parole has been revoked prior to the enactment of the statute.” {Matter of Rosario v New York State Div. of Parole, 84 AD3d 1665 [3d Dept 2011], citing People ex rel. Murphy v Ewald, 77 AD3d 778-779 [2d Dept 2010], and Ciccarelli, 35 AD3d at 1107-1108.) Rather, respondent argues, only parolees having three consecutive years of unrevoked parole at the time of the statute’s effective date are eligible for administrative termination of sentence. Respondent argues that Ordonez is distinguishable from the instant case, as involving a revocation of parole occurring after the parolee had accumulated more than three years’ unrevoked parole as of the effective date of the statute. Respondent concedes that a previous parole revocation does not necessarily disqualify a parolee from receiving administrative termination of parole.
Close examination of the limited authority extant, and cited by both sides as supportive of the respective positions of each,
*765 reveals that the DLRA administrative termination of parole statute has consistently been applied to accord relief to parolees whose period of unrevoked parole included the statute’s effective date, even if later revoked, so long as the unrevoked period was continuing when the statute went into effect and ultimately spanned three years. (People ex rel. Ordonez, supra [13 years’ unrevoked parole on effective date]; see People ex rel. Rosa v Warden, Edgecombe Correctional Facility, 80 AD3d 525 [1st Dept 2011] [uninterrupted and unrevoked presumptive release commencing before section 259-j’s effective date and continuing for requisite period thereafter satisfied requirement].) Notwithstanding petitioner’s contention, periods of parole which extended three years but were revoked prior to February 12, 2005 have consistently been rejected by the appellate courts as a basis for eligibility for termination. (See Matter of Rosario, supra [parole revoked eight years before effective date]; Matter of Murphy, 77 AD3d at 779 [“Executive Law § 259-j (3-a) provides retroactive relief to those who had accrued sufficient consecutive unrevoked parole time prior to its effective date”; relief denied where parole revoked six years prior to effective date]; Matter of Ciccarelli, supra [same].) “[B]y specifying an effective date in the legislation, the Legislature evinced its intent that the provision apply only to those persons who had or would thereafter accrue a period of unrevoked parole on or after that effective date.” (Matter of Ciccarelli at 1108 [citations omitted].)
The question for Miller thus becomes whether his accrual of more than three years of unrevoked parole was still extant on February 12, 2005, or whether the filing of the declaration of delinquency on December 19, 2004 constituted a revocation of his parole, ending his period of “unrevoked parole” in advance of the effective date of the statute and thereby disqualifying him for administrative termination based on that period. This issue appears to be one of first impression.
In addressing this question, DOCCS relies on the operative language of Penal Law § 70.40 (3) (a), which at the time at issue, provided:
“When a person is alleged to have violated the terms of . . . parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall interrupt the person’s sentence as of the date of the delinquency and such interruption shall continue until the return of the *766 person to an institution under the jurisdiction of the state department of correctional services.”
Respondent argues that because the declaration of delinquency “interrupts” the sentence and the individual’s parole supervision (Matter of Davidson v State of N. Y. Dept. of Correctional Servs., 53 AD3d 741 [3d Dept 2008]), sending him back to prison to await the resolution of the alleged violation, its filing constitutes “revocation” of the individual’s parole for purposes of section 205 (4).
This interpretation is problematic, however. Neither Penal Law § 70.40 (3) nor Matter of Davidson, also cited by respondent, states that the interruption of parole supervision after a declaration of delinquency revokes the individual’s parole. Indeed, if that were so, there would be no purpose in holding a final revocation hearing after the filing of a declaration of delinquency. Rather, these authorities merely establish that for purposes of calculating the defendant’s sentence, the filing of a declaration of delinquency interrupts the sentence as of the date of delinquency, and that such interruption continues until the defendant’s return to institutional custody. Once the individual is returned to prison, the sentence resumes running (Penal Law § 70.40 [3] [a]). The statute, therefore, addresses calculation of the sentence and how credit will be afforded against the term of the sentence based upon the individual’s re-incarceration (Penal Law § 70.40 [3] [a]) or jail time served (Penal Law § 70.40 [3] [c]). It was not affected by the passage in the DLRA of section 259-j (3-a), and refers neither to parole revocation nor to administrative termination of parole.
In applying section 205 (4), this court must bear in mind that “[w]here words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76.) Here, the plain language of the statute speaks in terms of “unrevoked” parole. Under both the Federal and New York Constitutions, a term of parole may not be “revoked” without affording the parolee the right to a final hearing, conforming to due process standards, with counsel present. (Morrissey v Brewer, 408 US 471, 487-488 [1972] [“There must ... be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority.”]; People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 388 [1971] [requiring the presence of counsel at the revocation hearing].) As the *767 Supreme Court explained in Morrissey, both the parolee and society benefit from testing allegations of a violation of parole to determine its accuracy:
“Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions. See People ex rel. Menechino v Warden . . . (parole board had less than full picture of facts). And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness.” (Morrissey v Brewer, 408 US at 483-484 [citations omitted].)
Clearly, one’s parole cannot be revoked absent a proceeding which addresses these societal interests. Moreover, at the time of its enactment of the DLRA, the Legislature presumably was well aware of the principles of law concerning parole revocation established in Morrissey more than three decades earlier.
In the present case, defendant’s parole was not “revoked” until his final revocation hearing, comporting with the standards of Morrissey and Menechino, concluded on May 5, 2005. On February 12, 2005, therefore, although his parole had been “interrupted” for sentence calculation purposes under section 70.40 (3), it remained “unrevoked” for purposes of section 205 (4), thus entitling Miller to receive administrative termination of his parole under the DLRA.
To the extent that it may be argued that the statute is ambiguous, and requires interpretation, the result would be the same. Section 259-j (3-a) has been specifically recognized by the Court of Appeals as among the “ameliorative provisions designed to afford distinct sentencing relief to defendants who committed their crimes prior to [the DLRA’s] effective date.” (People v Utsey, 7 NY3d 398, 403 [2006]; see also People v Mills, 11 NY3d 527, 537 n 5 [2008] [recognizing that a defendant may seek termination of sentence relief under the DLRA even after having previously violated parole].) In keeping with the ameliorative intent of the legislation, this court’s construction of the term “unrevoked” in Correction Law § 205 (4), should a construction or interpretation be necessary, should afford the greatest benefit to the petitioner, and should result in a finding that his parole had not been revoked as of the effective date of *768 the statute. (See Statutes § 321 [remedial statutes are to be construed liberally to carry out their intended reforms and to promote justice].)
III. Conclusion
For the foregoing reasons, this court finds that the Parole Board and DOCCS have failed to perform the duty enjoined upon them under Correction Law § 205 (4). Accordingly, pursuant to CPLR 7803 (1), the petition is granted and DOCCS is directed to grant petitioner termination of sentence pursuant to Correction Law § 205 (4).

. Correction Law § 205 (4) was enacted as part of the Drug Law Reform Act of 2004 (DLRA) (L 2004, ch 738, §§ 1-41) and was formerly codified as Executive Law § 259-j (3-a). It was recodified and superseded the former statute as part of the New York State budget enactment for fiscal year 2011-2012, which merged the former Department of Correctional Services and Division of Parole into a single agency, the Department of Corrections and Community Supervision, with no substantive change from prior law. (L 2011, ch 62, part C, subpart A, §§ 32, 38-g [eff Mar. 31, 2011].)

. This release was Miller’s third release to parole on the instant case. (See Miller I at 2-3.)