[938 NYS2d 290]

In the Matter of CLARENCE MAYFIELD, Appellant, v ANDREA EVANS, Chairwoman, New York State Division of Parole, Respondent.

First Department, February 14, 2012

**APPEARANCES OF COUNSEL**

*Steven Banks, The Legal Aid Society*, New York City (*Martin J. LaFalce* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Simon Heller* and *Benjamin N. Gutman* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

This appeal gives us the opportunity to address the statutory and constitutional validity of the New York State Division of Parole's bifurcated parole revocation process pursuant to 9 NYCRR 8005.20 (c) (6), the regulation establishing such a process for parolees who have been convicted of homicide, sex crimes or kidnapping. We hold that this regulation is a usurpation of legislative prerogative and therefore void. We thus remit this matter to the New York State Board of Parole (Parole Board) so that petitioner may receive a new hearing that is consistent with the strictures of Executive Law § 259-i (3) (f) as well as due process guarantees.

Background

In 1998 petitioner was convicted of manslaughter in the first degree and sentenced to an indeterminate term of 6 to 18 years. That sentence ran concurrently with his 1992 conviction for robbery in the first degree and his 1992 conviction for attempted murder in the second degree.

On October 16, 2008, petitioner was conditionally released to parole supervision. On January 29, 2009, the Division of Parole issued a parole violation warrant and charged petitioner with violating the conditions of his parole. Petitioner was taken into custody immediately and without incident. On April 17, 2009, the Division supplemented petitioner's parole violation report to add an additional charge.

From April 17, 2009 until May 6, 2009, petitioner's counsel negotiated with the Division Deputy Chief Edmund Del Rio and Administrative Law Judge (ALJ) Amy Porter as to an appropriate disposition. After an "intense investigation," the Division concluded that the initial charges were "unfounded." As to the additional charge made on April 17, 2009, Deputy Chief Del Rio offered to recommend an 18-month time assessment in exchange for petitioner's guilty plea.

On May 5, 2009, petitioner's revocation hearing was held. ALJ Porter, who presided over the hearing, agreed to honor the plea arrangement, and recommended to the Parole Board that petitioner next be considered for re-release in 18 months. The initial charges were dismissed, and petitioner pleaded guilty to

the additional charge made on April 17, 2009. Additionally, petitioner was given the opportunity to present mitigating evidence regarding his violation of the additional charge.

ALJ Porter's written decision stated that a parole violation had occurred and recommended that petitioner be given an 18-month time assessment. The ALJ further prepared an "Analysis Sheet," which stated that charges one through six were "unfounded" and withdrawn. The ALJ did not note petitioner's mitigating evidence in either her written decision or the Analysis Sheet.

Subsequently, pursuant to 9 NYCRR 8005.20 (c) (6), a Parole Board Commissioner issued a decision fixing petitioner's date for consideration of re-release by the Parole Board at 36 months. The Commissioner's one sentence decision noted that petitioner had prior convictions for robbery as well as attempted murder, and that his parole violation occurred only $1^1/_2$ months after his release.

Following the Commissioner's determination, petitioner filed an administrative appeal challenging the summary parole revocation procedure created by 9 NYCRR 8005.20 (c) (6), as well as the 36-month time assessment. On July 21, 2010, the Division of Parole rejected petitioner's challenge to the time assessment on the grounds that (1) petitioner waived his rights by failing to object at the hearing before ALJ Porter, and (2) the Parole Board retained exclusive authority to impose punishment against parole violators.

In October 2010 petitioner filed a CPLR article 78 petition challenging the Division's determination. Petitioner argued that the decision made pursuant to 9 NYCRR 8005.20 (c) (6) was arbitrary, violated Executive Law § 259-i (3) (f) (x), and denied him due process of law. Petitioner requested that the court annul 9 NYCRR 8005.20 (c) (6) and/or direct respondent Chairwoman of the Division to reduce the time assessment to 18 months. In its answer, respondent asserted that due process does not apply to parole revocation determinations once a violation has been found, and that the Executive Law permitted the summary procedure created in 9 NYCRR 8005.20 (c) (6).

By order entered March 15, 2011, Supreme Court denied the petition and dismissed the proceeding, finding that (1) the regulation authorizing a single Parole Board commissioner to modify the ALJ's time-assessment recommendation does not violate Executive Law § 259-i (3); (2) the regulation does not violate petitioner's due process rights; and (3) the decision to extend petitioner's time assessment to 36 months was not

arbitrary and capricious (*see Mayfield v Evans*, 2011 NY Slip Op 30552[U] [2011]).

Petitioner moved to reargue that part of the court's decision that rejected his argument that section 8005.20 (c) (6) violates Executive Law § 259-i (3) (f). In its decision on reargument, Supreme Court again found that the regulation was not "out of harmony" with the statute, supplementing its reasoning with the observation that the statute allows the presiding officer only to "fix a date *for consideration by the board*," and that this language allows the Parole Board to impose an additional level of review "in the case of certain specified crimes" (*Mayfield v Evans*, 2011 NY Slip Op 31744[U], *7, 8 [2011]). This appeal followed, and we reverse and remand for the reasons stated below.

Analysis

Generally, the process by which alleged parole violations are adjudicated is governed by Executive Law § 259-i (3) (f). The statutory procedure outlined therein provides that a parolee has the right to confront and cross-examine witnesses (unless there is good cause for the witnesses' nonattendance) and to present witnesses and evidence (§ 259-i [3] [f] [v]). At the close of the hearing, the presiding officer may sustain or dismiss any or all of the violation charges (*see* § 259-i [3] [f] [viii]). If any violation charges are sustained, the presiding officer must prepare a written statement indicating, among other things, the evidence relied upon and the reasons for the disposition (§ 259-i [3] [f] [xi]). For each violation found, the officer may, among other things, restore the violator to supervision or direct reincarceration and issue a "time assessment"—i.e., a date upon which a violator becomes eligible for consideration by the Board for re-release (*see* Executive Law § 259-i [3] [f] [x]).

However, in the case of parolees, such as petitioner, who have been convicted of homicide, sex crimes, kidnapping and related offenses, the time-assessment portion of the parole revocation procedure is governed by 9 NYCRR 8005.20 (c) (6). Pursuant to that regulation, the presiding officer's time assessment for parole violators convicted of these serious crimes is transformed into nothing more than a mere recommendation. The ultimate time assessment for this class of violators is determined by a single member of the Parole Board, and that individual is not bound by the recommendation of the presiding officer (*see People ex rel. Larocco v Warden*, 82 AD3d 604, 605 [2011], *lv denied* 17 NY3d 703 [2011]; *People ex rel. Coleman v Smith*, 75 AD2d 706,

707 [1980], *lv denied* 50 NY2d 804 [1980]), or any of the strictures of Executive Law § 259-i (3) (f).

Statutory Claim

The Court of Appeals has long held that "[t]he Legislature may authorize an administrative agency 'to fill in the *interstices* in the legislative product by prescribing rules and regulations *consistent* with the enabling legislation' " (*Matter of Allstate Ins. Co. v Rivera*, 12 NY3d 602, 608 [2009] [emphasis added], quoting *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003], quoting *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). In practice, this has meant that "an agency [charged with the enforcement of a statute has been empowered to] adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (*Matter of Allstate Ins. Co. v Rivera*, 12 NY3d 602, 608 [2009], quoting *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]). Nevertheless, such "an agency cannot promulgate rules or regulations that contravene the will of the Legislature" and the express terms of the authorizing statute (*Weiss v City of New York*, 95 NY2d 1, 4-5 [2000], citing *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 480 [1978]; *cf. Bowen v Georgetown Univ. Hospital*, 488 US 204, 208 [1988]).

In ascertaining whether a regulation is consistent with the statute that it is based on, "this Court is faced with the interpretation of statutes and pure questions of law and no deference is accorded the agency's determination" (*Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills*, 4 NY3d 51, 59 [2004]; *cf. Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575, 580 [2002]; *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231 [1996]); *Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173 [1988]). "[I]f [a] regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *cf. Weiss*, 95 NY2d at 5 [striking down an administrative agency's regulation for expanding liability in a manner inconsistent with New York State Labor Law]; *Finger Lakes Racing Assn.*, 45 NY2d at 480-481 [striking down an administrative agency's regulation for being in "direct conflict" with the statute]). Any other result would impermissibly allow an administrative agency to invade

the legislative province and usurp legislative authority (*see Matter of Gross v New York City Alcoholic Beverage Control Bd.*, 7 NY2d 531, 537-539 [1960]; *cf. Ernst & Ernst v Hochfelder*, 425 US 185, 213-214 [1976, Powell, J.] ["The rulemaking power granted to an administrative agency charged with the administration of a . . . statute is not the power to make law"]).

As previously observed, section 259-i (3) (f) of Executive Law governs revocation proceedings. Prior to 1991, the Executive Law, with respect to time assessments, stated:

> "If the presiding officer is satisfied that there is a preponderance of evidence that the alleged violator violated one or more conditions of release in an important respect, he shall so find. *When the presiding officer is a board member,* he may (A) direct the violator's reincarceration and fix a date for consideration by the board for re-release on parole or conditional release, as the case may be . . . *When the presiding officer is a hearing officer,* he may recommend to the board the dispositions [provided for in] this subparagraph" (former Executive Law § 259-i [3] [f] [x] [emphasis added]).

The pre-1991 time assessments made by a non-Parole Board member were only recommendations, subject to Parole Board approval.

In 1991 the legislature amended the statute and eliminated the distinction between time assessments made by a hearing officer who is a Parole Board member, and time assessments made by a hearing officer who is not part of the Parole Board (*see* L 1991, ch 166, as amended). The current version of the Executive Law states, in relevant part:

> "(ii) *The revocation hearing shall be conducted by a presiding officer who may be a member or a hearing officer designated by the board.* . . .
>
> "(x) If the presiding officer is satisfied that there is a preponderance of evidence that the alleged violator violated one or more conditions of release in an important respect, he or she shall so find. *For each violation so found, the presiding officer may* (A) direct that the . . . parolee . . . be restored to supervision; (B) as an alternative to reincarceration, direct the . . . parolee . . . be placed in a parole transition facility . . . (C) . . . *direct the violator's*

*reincarceration and fix a date for consideration by the board for re-release on presumptive release, or parole or conditional release, as the case may be"* (Executive Law § 259-i [3] [f] [ii], [x] [emphasis added]).

Hence, under the current version of the Executive Law, a hearing officer who is not a Parole Board member may "fix" time assessments without Board approval, regardless of the underlying conviction.

The Division of Parole regulations, as set forth in 9 NYCRR 8005.20 (c) (6), state:

"A decision within these guidelines may be made by the presiding officer as a final and binding decision for all categories of violators, other than those serving sentences for [homicide, kidnapping, and sex crimes]. All decisions within these guidelines regarding alleged or adjudicated violators serving sentences for [these particular crimes] must be reviewed by a member or members of the Board of Parole and shall be decided as follows:

"(i) *a single member of the board shall make the final decision that imposes a time assessment*" (emphasis added).

Thus, where a parole violator has been convicted of certain serious crimes, the Division has removed authority from a non-Parole Board member hearing officer to make time assessments.

█ Respondent argues that Parole Board regulations can easily be read in accord with Executive Law § 259-i (3) (f). First, it argues, the Executive Law provides that a hearing officer "may" enter one of several dispositions, and does not use the directive word "shall." Thus, respondent claims, the regulation does not contravene the plain wording of the statute, as the statute's use of "may" allows the presiding officer to fix a date, but does not require her to do so; and nothing in the statute explicitly prevents her from another unlisted option, such as offering a recommendation consistent with 9 NYCRR 8005.20 (c) (6). Respondent's argument is unpersuasive.

It is true that a regulation adopted by an agency, "in implementation of the statutory scheme it is empowered to enforce, is to be read, if possible, in a manner consistent with, rather than in opposition to, the governing statute" (*see People ex rel. Knowles v Smith,* 54 NY2d 259, 267 [1981]). However, a

court cannot contort statutory language and elide legislative intent (*see Matter of Brusco v Braun*, 199 AD2d 27, 32 [1993], *affd* 84 NY2d 674 [1994]; *cf. Osborn v Bank of U.S.*, 9 Wheat [22 US] 738, 866 [1824, Marshall, Ch. J.] ["(j)udicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law"]).* Here, the use of the word "may" in the Executive Law indicates that the hearing officer "may" choose from the enumerated list, but it does not indicate that the officer "may" choose some other option not listed by the Legislature. An enumerated list warrants an irrefutable inference that omitted items were intentionally excluded (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 240 [mandating the application of the maxim expressio unius est exclusio alterius to the construction of statutes]; *see also Matter of New York City Council v City of New York*, 4 AD3d 85, 96 [2004], *lv denied* 4 NY3d 701 [2004]). If there were other options available to the hearing officer, they would have been so listed. Thus, the word "may" is ultimately directive, as it instructs the hearing officer to choose an option from a list that does not include merely recommending a time assessment for serious offenders, as contemplated by 9 NYCRR 8005.20 (c) (6).

Respondent also argues that the language in the Executive Law actually makes all of the time assessment determinations advisory to the Parole Board, and is thus in accord with 8005.20 (c) (6). The language respondent relies upon for this proposition is that, "in the case of . . . parolees," the presiding officer may "direct the violator's reincarceration and fix a date *for consideration by the board for re-release on presumptive release*" (Executive Law § 259-i [3] [f] [x] [C] [emphasis added]). Thus,

---

* Marshall's proclamation in *Osborn* echoed John Locke's sentiments given 134 years earlier, albeit in support of a constitutional revolution in seventeenth century England, but which has provided foundational support for our form of government:

"legislative [power] is not only the supreme power of the common-wealth, but sacred and unalterable in the hands where the community have once placed it; nor can any edict of any body else, in what form soever conceived, or by what power soever backed, have the force and obligation of a law, which has not its sanction from that legislative which the public has chosen and appointed: for without this the law could not have that, which is absolutely necessary to its being a law, the consent of the society, over whom no body can have a power to make laws, but by their own consent, and by authority received from them" (Locke, *The Second Treatise of Civil Government*, ch XI, § 134 [1690] [footnote omitted]).

respondent argues, the statute itself contemplates that the hearing officer's time assessment is always subject to Parole Board approval, even in cases where the hearing officer is empowered to set the time assessment. However, the phrase "for consideration by the board for re-release" refers to the future parole proceeding at the end of the term of time assessed, and not the time assessment decision itself. The Executive Law makes it clear that this "consideration by the board for re-release" is an entirely different proceeding, conducted after the time assessment has elapsed and after a required personal interview (Executive Law § 259-i [3] [f] [x]; *see also* 9 NYCRR 8002.6).

We agree with petitioner that, by enacting 9 NYCRR 8005.20 (c) (6), the Division of Parole had changed the procedure for parole proceedings concerning serious crimes back to its pre-1991 state, in direct contravention of the 1991 changes enacted by the Legislature. The Division regulations for serious crimes have the effect of overruling the Legislature's 1991 amendment, which does not require Parole Board approval of time assessments, regardless of the underlying conviction. It must be assumed that the Legislature intended its 1991 amendment to be followed (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 193; *see also People ex rel. Sheldon v Board of Appeals of City of N.Y.*, 234 NY 484, 495 [1923] ["We must assume that the lawmaking body intended to effect a material change in the existing law, otherwise the legislation would be nugatory"]). We therefore hold that 9 NYCRR 8005.20 (c) (6) is an invalid usurpation of legislative authority. The Division must bring its regulations into conformity with the Executive Law so that petitioners can receive the kind of hearing that the Legislature intended.

Due Process Claim

Since petitioner is entitled to a new hearing to determine the appropriate time assessment, we must address the constitutional issues in this case to ensure that petitioner receives a hearing that is consistent with due process. The Supreme Court has held that a prisoner who seeks to obtain future parole has no right to due process, since an inmate's interest in parole "is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process" (*Greenholtz v Inmates of Neb. Penal & Correctional Complex*, 442 US 1, 11 [1979]). In contrast to a prisoner who merely hopes to be afforded parole, however, a parolee who, after having been granted supervised release, is accused of violat-

ing the terms of parole, is accorded due process rights, and the state must afford the alleged violator a meaningful opportunity to be heard (*see Morrissey v Brewer*, 408 US 471, 484 [1972, Burger, Ch. J.]; *People ex rel. Knowles v Smith*, 54 NY2d 259, 264 [1981], *supra* ["(T)hough a parolee's liberty is a conditional one, it is a 'valuable' liberty and, as such, it is within the protection of the Fourteenth Amendment"] [citation omitted]).

Since parole arises after a criminal conviction, the "full panoply of rights" are not due a defendant in an administrative parole proceeding (*Morrissey*, 408 US at 480). Because the parolee faces the loss of continued liberty, however, there must be an "informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior" (*id.* at 484; *Matter of Tremarco v New York State Bd. of Parole*, 87 AD2d 114, 119 [1982], *appeal dismissed* 58 NY2d 968 [1983] ["The requirement for prompt hearings in parole *revocation* cases grows out of a recognition that, once released, a parolee has a legitimate expectation of continued freedom"]).

■ Respondent argues that the parole revocation process ends with the hearing officer's recommendation to revoke parole and issue a time assessment such that the violator is no longer a parolee at the point that the Parole Board member issues a time assessment. Effectively, respondent's position is that the revocation stage requires due process while the time assessment stage does not. There are several reasons why respondent's claim that someone in petitioner's position has no due process rights is incorrect. First, it is not a foregone conclusion, at the point of the time assessment stage of the parole revocation hearing, that the violating parolee will be returned to physical custody and, once again, regain the status of a prisoner with no liberty interest in parole. Second, under *Morrissey*, due process attaches not only to the proof of violation stage of the revocation proceeding, but also to the time assessment stage (*see* 408 US at 488 ["The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation"]). Because *Morrissey* contemplates that a parolee who is determined to have violated parole must still be given an opportunity to argue that revocation is not warranted, this cuts in favor of finding that petitioner was still a parolee when the time assessment

was made and thus entitled to due process (*id.*; *cf. Matter of Miller v New York State Dept. of Corrections and Community Supervision*, 33 Misc 3d 761, 767 [2011] ["defendant's parole was not revoked until his final revocation hearing, comporting with the standards of *Morrissey* and (*People ex rel.*) *Menechino* (*v Warden, Green Haven State Prison*, 27 NY2d 376 [1971]), concluded"] [internal quotation marks omitted]). Lastly, the *Morrissey* Court not only considered time assessment to be the second step of a two-part process, it considered it the more complex step (408 US at 479-480). It is difficult, in light of the aforementioned language in *Morrissey* about due process (*id.* at 488-489), to conclude that the more complex step does not require due process while the simpler step does.

It is beyond dispute that "[t]he essence of [procedural] due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it" (*Mathews v Eldridge*, 424 US 319, 348 [1976] [internal quotation marks omitted]; *Matter of Quinton A.*, 49 NY2d 328, 334 n [1980]). By any measure, the sweeping grant of authority to a single board member whom petitioner could not address violated petitioner's right to due process of law. The process established in 9 NYCRR 8005.20 (c) (6) inappropriately failed to (1) set forth content, procedures, or guidelines to circumscribe the board member's review of a presiding officer's recommendation; (2) establish any standard under which the board member would be authorized to modify a recommendation of the presiding officer who heard from both parties and weighed the relevant information in imposing the time assessment; (3) require the board member to read, much less review, the record created at a revocation hearing and consider mitigating evidence; (4) require the board member to detail the reasons for the modification; and (5) afford petitioner and/or his counsel an opportunity to be heard by the board member in person or in writing. In short, the regulation at issue here inexcusably deprived petitioner of the opportunity to be heard (*see Morrissey*, 408 US at 488; *cf. People v David W.*, 95 NY2d 130 [2000] [holding that the failure to provide the defendant an opportunity to contest an administrative classification that he was a sexually violent predator amounted to a due process violation]; *For the People Theatres of N.Y. Inc. v City of New York*, 84 AD3d 48, 63 [2011] [holding that it was improper for Supreme Court to disallow the plaintiffs from presenting their case against an ordinance that could have an adverse impact on

their interests]). Moreover, the absence of a detailed decision inappropriately foreclosed the possibility of intelligent review of the Parole Board member's reasons for imposing a particular time assessment (*see Cappiello v New York State Bd. of Parole*, 6 Misc 3d 1010[A], 2004 NY Slip Op 51762[U], *6 [2004]; *Matter of Canales v Hammock*, 105 Misc 2d 71, 74 [1980]).

Petitioner may very well deserve the longer 36-month time assessment that the Board member imposed. While we would readily defer to the Parole Board's determination in this case were we in a position to do so (*cf. Stuyvesant Town-Peter Cooper Vil. Tenant's Assn. v Metropolitan Life Ins.*, 12 Misc 3d 1194[A], 2006 NY Slip Op 51572[U] [2006]), we are unable to take such action because the current procedure outlined in 9 NYCRR 8005.20 (c) (6) failed to comport with the minimum state and federal constitutional requirements of due process (*see Morrissey*, 408 US at 488; *cf. David W.*, 95 NY2d at 130; *For the People Theatres of N.Y. Inc.*, 84 AD3d at 63).

In short, petitioner was entitled to a time assessment hearing that was similar in nature to the one that other individuals received under Executive Law § 259-i (3) (f) (*see Morrissey*, 408 US at 488; *cf. David W.*, 95 NY2d at 133; *People Theatres of N.Y. Inc.*, 84 AD3d at 63). That is to say, petitioner had a right to a hearing (1) that was subject to procedures, or guidelines that would govern the board member's review in which (2) he could make his case to someone who would have full cognizance of all the evidence presented in the matter and would be able to consider whether there were any mitigating factors in his favor, and (3) he would be given the reasons justifying the finding of a parole violation and his particular time assessment (*id.*). Ultimately, "[w]hat is needed is an informal hearing structured to assure that . . . the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior" (*Morrissey*, 408 US at 484). Because the time assessment hearing here was unlawful, we remit this matter to the Parole Board to promptly provide the petitioner with a new hearing, where he will be afforded an opportunity to address the ultimate decision-maker as to an appropriate time assessment in a manner consistent with the Executive Law as well as the State and Federal Constitutions (*cf. People ex rel. Gaskin v Smith*, 55 AD2d 1004 [1977]).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Cynthia S. Kern, J.), entered March 15, 2011, which denied the petition and dismissed the CPLR article 78 proceeding challenging a final determination of

the New York State Division of Parole, dated July 21, 2010, affirming the Parole Board's determination that petitioner violated his parole and imposing a time assessment of 36 months, should be reversed, on the law, without costs, and the matter remanded for further proceedings consistent herewith. The appeal from the order, same court and Justice, entered June 28, 2011, which, upon reargument, essentially adhered to the original determination, should be dismissed, without costs, as academic.

MAZZARELLI, J.P., SWEENY, DEGRASSE and MANZANET-DANIELS, JJ., concur with ACOSTA, J.

Order and judgment (one paper), Supreme Court, New York County, entered March 15, 2011, reversed, on the law, without costs, and the matter remanded for further proceedings consistent herewith. Appeal from order, same court and Justice, entered June 28, 2011, dismissed, without costs, as academic.