OPINION OF THE COURT
Peter H. Moulton, J.
In this CPLR article 78 proceeding petitioners seek a declaration that respondents have exceeded their powers, violated law, and acted arbitrarily and capriciously by adopting rules establishing the Nissan NV200 as the “Taxi of Tomorrow” and entering into a 10-year, exclusive manufacturing and supply contract with a subsidiary of Nissan North America, Inc.
Background
The Taxi of Tomorrow program was initiated by respondent Taxi & Limousine Commission (the TLC) in 2007 to consider options to improve taxicabs in New York City. As a result of a lengthy process involving requests for proposals (RFPs) Nissan North America, Inc. (Nissan) was chosen in 2011 to be the sole manufacturer of a purpose built taxi vehicle, the Nissan NV200 (hereinafter referred to as the ToT). The ToT rules were approved by the Taxi & Limousine Commission on September 20, 2012 and were published on October 1, 2012. They became effective 30 days after publication. The anticipated “activation date” of the ToT rules is October 31, 2013. The rules apply to almost all of the over 13,000 New York City taxis, except for a few hundred restricted medallions which are exempt.[1] Pursuant to the ToT rules, taxicab and medallion owners will be required to purchase the Nissan NV200 when their existing vehicles need to be replaced.
Petitioner Committee for Taxi Safety, Inc. is a trade association of licensed leasing agents which manages over 2,000 of the more than 13,000 taxicabs that are licensed by the TLC to ac *932 cept street hails. Petitioner Taxifleet Management LLC manages approximately 725 unrestricted taxi medallions. Respondent TLC was created under the New York City Charter for the purpose of the continuance, development and improvement of taxi service, and was granted power to set various enumerated standards (see NY City Charter § 2300).
The TLC contends that the ToT is a “superior vehicle” which will increase passenger comfort. Taxi equipment will be installed in the ToT during the manufacturing process. The current practice is to “hack up” an existing vehicle with taxi accessories post manufacture. The ToT will have extra legroom, rear heating, ventilation and air conditioning controls, passenger controlled reading lights, floor lighting, a transparent roof panel, extra room for luggage, a six-way adjustable driver’s seat, and a built-in navigation system. Safety features will include sliding passenger doors to minimize the risk of pedestrians and cyclists getting struck, illuminated lights that inform the public that doors are opening, and passenger airbags around the partition — an important feature given that there is currently no way to control whether partitions installed during hack-up will interfere with passenger airbags. The ToT will also include some features for the disabled, but is not wheelchair accessible.
In this lawsuit, petitioners question the wisdom of dictating the Nissan NV200 (which has never before been manufactured) as the one and only taxi in New York City, and assert an array of causes of action. Petitioners maintain that the TLC exceeded its rule-making authority under the guise of its power to establish standards. They argue that the ToT rules are anticompetitive and therefore violate the General Business Law and the New York State Constitution. Petitioners assert that respondents violated the hearing requirements of New York City Procurement Policy Board Rules (9 RCNY) § 2-11 and New York City Charter § 326. Petitioners aver that a conflict of interest existed because the engineering experts who evaluated the RFPs had a long-standing business relationship with Renault, S.A., which holds a significant stake in Nissan. Petitioners raise numerous concerns in an effort to demonstrate that the ToT rules are irrational, including concerns regarding the lack of road testing, concerns regarding adequate supply and cost of the vehicles and parts, and concerns that the glass roof prevents roof top advertising. Petitioners also mention that the Nissan NV200 is not wheelchair accessible, violating the Americans with Disabilities Act (the ADA). The ADA argument is not as *933 serted as a cause of action but is asserted, and developed, in a related proceeding which is also pending before this court, Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn. (index No. 100135/13).[2] Finally, and dispositively, petitioners argue that the ToT rules violate Administrative Code of the City of New York § 19-533 because the Nissan NV200 is admittedly not a hybrid-electric (hybrid) vehicle.
In opposition to the petition, respondents maintain that the TLC did not exceed any rule-making authority, because the TLC can set standards under New York City Charter § 2303 (b) (6).[3] They assert that the ToT rules are not anticompetitive because petitioners cannot point to a conspiracy, nor allege an “agreement” or an “unreasonable” restraint on trade. Respondents assert that ‘ ‘ [m] anufacturing a custom-designed vehicle for a limited market is cost prohibitive ... it would be difficult, if not impossible, to expect a manufacturer to build such a vehicle if it was not given assurances that the majority of the industry would have to purchase the vehicle” (see respondents’ mem of law in opposition at 10). Such assurances amount to a non-actionable unilateral act by the City to open bidding to select a single purpose-built vehicle.[4] Respondents further maintain that petitioners’ argument concerning compliance with the procurement rules is without basis. They point out that the selection of Nissan was the result of RFPs, and therefore maintain that the sole source procurement rules are irrelevant. Further, respondents contend that the selection of a single design is not irrational and serves multiple interests. Drivers and passengers will know what to expect and they will recognize the iconic design. Comfort and convenience can be set “more precisely” because respondents are not “limited to painting on an existing canvas” and they can design the taxi for stop-and-go traffic or poor roads (respondents’ mem of law in opposition at 7). Additionally, respondents maintain that own *934 ers will benefit from the 150,000-mile warranty, predictable price increases and a mandated owners’ input process. Respondents also maintain that the ToT rules do not violate Administrative Code of the City of New York § 19-533, although as discussed below their argument on this point is terse and unpersuasive.
After oral argument, the court requested further briefing on Administrative Code § 19-533, and whether the ToT rules comply with this section’s mandate that the TLC “approve one or more hybrid electric vehicle models for use as a taxicab” (Administrative Code § 19-533).[5] This decision only focuses on the narrow issue of whether respondents violated Administrative Code of the City of New York § 19-533, an issue which has been all but conceded. The decision focuses on this issue because it dooms the existing ToT rules, and renders it unnecessary to address any other argument.
Discussion
Generally, courts will not interfere with agency determinations unless “there is no rational basis for the exercise of discretion or the action complained of is arbitrary and capricious” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [internal quotation marks omitted]). However, where the issue is one of law, the agency is not entitled to deference because that issue is for the court (see e.g. Matter of Bikman v New York City Loft Bd., 14 NY3d 377 [2010] [agency is not entitled to deference in interpreting the Multiple Dwelling Law and the Rules of the City of New York; matters of statutory interpretation do not require specialized agency knowledge]). The Court of Appeals has long held that “[t]he Legislature may authorize an administrative agency ‘to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation’ ” (Matter of Mayfield v Evans, 93 AD3d 98, 103 [1st Dept 2012] [citations and emphasis omitted]). Although the agency can go beyond the text of legislation, if not inconsistent with the statutory language or underlying purpose, “an agency cannot promulgate rules or regulations that contravene the will of the Legislature” or the terms of the authorizing statute (id.). The existing ToT rules run afoul of this final restriction on agency action, because *935 they violate Administrative Code of the City of New York § 19-533, which “has the force of a statute in the City of New York” (Bittrolff v Ho’s Dev. Corp., 77 NY2d 896, 899 n [1991]).
Administrative Code of the City of New York § 19-533 provides, in relevant part:
“Clean air taxis.
“The commission shall approve one or more hybrid electric vehicle models for use as a taxicab within ninety days after the enactment of this law. The approved vehicle model or models shall be eligible for immediate use by all current and future medallion owners. For the purposes of this chapter, a hybrid electric vehicle shall be defined as a commercially available mass production vehicle originally equipped by the manufacturer with a combustion engine system together with an electric propulsion system that operates in an integrated manner.” (Administrative Code of City of NY § 19-533.)
Respondents do not explain how the ToT rules, in their current form, can be harmonized with Administrative Code § 19-533.[6] Faced with the instant challenge, they rely on proposed amendments to the rules. By letter dated April 1, 2013, respondents informed the court that the TLC “was in the process of publishing rules to amend the Taxi of Tomorrow rules to ensure their consistency with New York City Administrative Code § 19-533.” The proposed amendments to the rules of chapter 67 of title 35 of the Rules of the City of New York were published in the City Record on April 1, 2013. A public hearing is scheduled for May 2, 2013 (after being rescheduled from May 16, 2013) (City Rec, Apr. 5, 2013 at 818).
The proposed amendments would grant unrestricted medallion holders the option to purchase a TLC-approved hybrid ve *936 hide until there is a hybrid version of the Nissan NV200.[7] However, that hybrid vehicle would still need to comply with the new ToT rules regarding passenger comfort. The proposed rules permit the use of any “Taxicab Model meeting the specifications set forth in § 67-05.1C of this Chapter” until “such time, if any, as an Official Taxicab Vehicle meets the requirements of § 19-533 of the Administrative Code” (City Rec, Apr. 1, 2013 at 766). Section 67-05.1C (b) requires that any hybrid must have an interior volume index of at least 138 cubic feet. Previously, a hybrid qualified if it had a passenger compartment interior volume index of at least 107 cubic feet (see Rules of City of NY Taxi & Limousine Commn [35 RCNY] former § 3-03). Thus, it is undisputed that hybrids such as the Nissan Altima, Toyota Camry or Toyota Prius — which have interior volume indexes of less than 119 cubic feet — could no longer be used once their period of use expires.
Petitioners note that the rules have not gone through all of the “CAPA” procedures mandated by City Administrative Procedure Act (NY City Charter) § 1043. The process involves publication of the proposed rule, public opportunity to comment, public hearing, review of the proposed rule by corporation counsel, and publication of the final rule in the City Record. Thus, petitioners assert that the court cannot consider the proposed amendments because they could be modified or rejected as a result of this mandated review. Morever, they assert that even if properly considered, the proposed amendments are fatally flawed because they would discourage the use of hybrid vehicles. As conceded by respondents, the only hybrids which might contain sufficient volume are the Toyota Highlander and Lexus RX400, which are high-end, expensive vehicles.[8]
*937 Respondents counter that it is speculative to conclude that the use of hybrids would decrease as a result of the proposed amendments, and assert that there will be only “minimal” impact on the hybrid fleet.[9] Moreover, respondents argue that the court should find that the proposed amendments are consistent with Administrative Code § 19-533, or should delay a ruling until the amendments are finalized.
Faced with the instant article 78 proceeding, the court must make a decision based on the ToT rules that exist, not the rules that may come into existence. The existing ToT rules are the result of a final rule-making process, their validity vel non presents a purely “legal question” and they have already begun to inflict the harm complained of by petitioners. These factors all demonstrate that a determination of the lawfulness of the existing ToT rules is ripe for decision (see Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510 [1986]).
The existing ToT rules violate Administrative Code § 19-533 as they do not provide for a hybrid vehicle option. Indeed this violation is admitted in the very language of the proposed amended rules themselves, which permits the use of any “Taxicab Model meeting the specifications set forth in § 67-05.1C of this Chapter” until “such time, if any, as an Official Taxicab Vehicle meets the requirements of § 19-533 of the Administrative Code” (emphasis added). Respondents cannot use proposed amended rules to salvage the ToT. Respondents cite no cases for the novel proposition that an agency may rely on a proposed rule which has not yet been adopted to avoid a finding that a current rule does not violate law. Respondents assert that
“[w]ithout a final agency decision, it is not proper for the Court to rule on whether the Proposed Rules are arbitrary and capricious. Respondents though are not seeking an advisory opinion on whether the Proposed Rules would satisfy such a standard of review. Rather, respondents are simply asking the *938 Court at this stage to take notice of the fact that the Proposed Rules eliminate any inconsistency between Administrative Code § 19-533 and the Taxi of Tomorrow rules. Such a ruling would not in any way limit petitioners’ ability to challenge the Proposed Rules in a subsequent Article 78 proceeding.” (See respondents’ supplemental mem of law at 3-4.)
It is unclear what respondents seek in this passage. A “ruling” which takes “notice” of the proposed amendments but does not “rule” on their legality is not contemplated by the CPLR. In fact, it is “generally inappropriate for the courts to consider the validity of proposed legislation” and may do so only in narrow circumstances, such as where a proposed referendum sought to be removed from the ballot is in direct conflict with a state statute (Matter of Fossella v Dinkins, 66 NY2d 162, 166-167 [1985]).
Legislative history and related Administrative Code provisions reflect the City Council’s intent to promote hybrid vehicles, and its concern that the TLC’s preoccupation with passenger comfort hinders that goal. A report of the Infrastructure Division of the City Council, dated June 27, 2005, explains the purpose behind Administrative Code of the City of New York § 19-533. The report notes that taxis operate 24 hours a day and thus “it is important to consider legislation whose purpose is to encourage the use and development of hybrid electric vehicles for the purpose of increasing fuel efficiency, reducing air pollution and lowering dependence on foreign oil” (see rep at 2, attached as exhibit 8 to Silverman aff). The report goes on to note that “[t]he New York City Taxi & Limousine Commission has promulgated rules mandating specifications for taxicabs. These specifications, while important to passenger comfort prevent many promising alternative fuel vehicles that do not meet current minimum vehicle specifications, as set forth in its rules, from being used as taxicabs” (id.).
In 2006, the City Council amended the Administrative Code to direct the TLC “develop and approve a plan to significantly increase the number of clean air and accessible vehicles in New York city” and to create an education campaign for the promotion of hybrid taxis and annually report on progress (Administrative Code § 19-534 [b]). At the vote, the Chair of the Transportation Committee at the time, John Liu, cited the City Council’s strong commitment to hybrid vehicles and position “that we would like to see the entire fleet, both accessible and environmentally sound, as soon as possible. That’s our objec *939 tive, and we don’t want to do anything that would delay that objective” (Dec. 6, 2006 tr at 6, attached as exhibit 10 to Silver-man aff). As a result of these initiatives, hybrid vehicles currently make up 46.6% of the fleet (see ToT environmental assessment statement, dated Sept. 2012 at 11, attached as exhibit AA to respondents’ answer). The intent of the City Council is clear — passenger comfort may not override city laws regarding the use and promotion of hybrid vehicles.
It is hereby adjudged that the petition is granted to the extent stated herein, without costs and disbursements; and it is further declared that the Taxi of Tomorrow rules violate Administrative Code of the City of New York § 19-533 and are therefore null, void and unenforceable.

. As the TLC website explains, a taxicab medallion is a metallic symbol attached to the hood of a New York City taxi and is a New York City license that authorizes a taxi driver to pick up people on the street in a TLC approved vehicle. Medallions are classified as restricted (for which the owners are required to operate hybrid-electric vehicles only) or unrestricted (see 35 RCNY 51-03). Presently, there are 273 restricted vehicles, 231 wheelchair accessible vehicles, and the balance are unrestricted medallions, which are the subject of this proceeding.

. Wheelchair accessibility was listed merely as “[a]mong the qualities envisioned” in the RFP (see respondents’ mem of law in opposition at 19). However, owners can purportedly purchase a wheelchair accessible taxi on demand from an unspecified third party with whom Nissan has an agreement.

. Section 2303 (b) (6) provides, in relevant part: “regulation and supervision shall extend to . . . [Requirements of standards of safety, and design, comfort, convenience, noise and air pollution control and efficiency in the operation of vehicles and auxiliary equipment.” (NY City Charter § 2303 [b] [6].)

. Respondents also point to exceptions to Nissan’s exclusivity and note that the contract can be terminated after the fifth year, if a superior vehicle is identified.

. Further briefing was also requested on the ADA in the related proceeding which was jointly argued with this proceeding.

. Respondents’ argument can be extrapolated from one cryptic sentence commencing with the language “Even if Administrative Code § 19-533 is read to require TLC’s ongoing approval of a hybrid electric taxicab model” (see respondent’s answer H 279; respondents’ mem of law in opposition at 12). Respondents are hesitant to state that they believe that they are in compliance with Administrative Code § 19-533 because the TLC had previously approved the use of hybrid vehicles (within 90 days after the enactment of the provision), and therefore, the TLC is now free to dispose of their use. This argument is nonsensical, especially because such an interpretation would make it impossible for the approved hybrid vehicles to be used by all current “and future” medallion owners, as required by Administrative Code § 19-533.

. According to the affidavit of Mike Hobson, Director of the Commercial Vehicles Division for Nissan North America, Inc., the contract provides that “Nissan will develop a hybrid electric vehicle by 2015.”

. Respondents maintain that the Toyota Highlander and Lexus RX450h would satisfy the passenger comfort specifications and the TLC’s mandate to “approve one or more hybrid electric vehicle models” in accordance with Administrative Code § 19-533 (see respondents’ supplemental mem of law at 5). They submit the affidavit of Martin Grindley, the Assistant Commissioner for the Safety and Emissions Division/Uniform Services Bureau of the TLC. He asserts that, based on the manufacturer’s measurements available online, the Toyota Highlander and Lexus RX400 would satisfy the requirements. However, in Greater N.Y. Taxi Assn. v New York City Taxi & Limousine *937 Commn. petitioners submit the affidavit of a former chairman of the TLC who also worked as its deputy counsel and counsel, asserting that neither the Toyota Highlander nor the Lexus RX450h would satisfy the proposed passenger comfort requirements.

. Respondents assert that only 1,873 hybrids are scheduled for retirement by Nissan’s anticipated end date to develop its hybrid (Dec. 31, 2015). This is “only between 5.56 percent and 26.2 percent of the hybrid fleet” which as of April 1, 2013 account for 7,147 of the 13,390 taxi vehicles (see respondents’ supplemental mem of law at 6).